We come to Capistrano v. Department of State Good morning, Your Honors. If it pleases the Court, my name is Nancy Miller, and I represent the petitioners in this matter. In his dissent to the Clindus case, Judge Marshall said, When the rights of Americans are involved, there is no basis for concluding that the power to exclude aliens is absolute. I think that's a good place to begin. The power to exclude aliens is absolute. There is no reason to believe that when the rights of Americans are involved. That's what this case is about. This case is about United States citizens and lawful permanent residents and their substantive due process right to family unity. It is about their right to have their family members join them here in the United States. And it is about their right to have both the petitions filed and approved, which has been done, but to have the rest of the process done in a way that complies with the law. That being said, we do have to address the issue, of course, of the doctrine of consular non-reviewability. What if you have a situation that we have here, where you have part of a family here, and you have another part of a family in Mexico? For family unity, they should come up here. I think it does come up, Your Honor. That's what it is about. It comes up because the way the family member in Mexico, or in this case in the Philippines, is treated, the way their application for their lawful permanent residence is adjudicated, directly impacts the rights of the family member who is the lawful permanent resident or United States citizen who is here in the United States and their right to be united with their family. Are you advocating an absolute right so that if a member of a family is granted permanent resident status, that that person then can become the source of permanent resident status for all family members who want to come to the United States? No, Your Honor. I think that Congress has spoken as to what family members may have the right to petition others, and I think they have the right to do that. They have the right to determine how far the family relationship will go, but once Congress has spoken and given that right to certain family members, I think that they have a right to due process for the rest of the process that enables them to bring their family here, and I don't think that was followed in this instance. The doctrine of consular non-reviewability is almost ancient in its origins. It precedes the founding of this country in many respects, does it not? It does, and it certainly is a well-established precedent within the history of this country. I agree, and yet even so, it's not absolute, and it isn't absolute in this instance, and I don't think that it's dispositive in this instance. There are, in fact, two assumptions that haven't been met here. One is that the consular officer is going to actually exercise their discretionary authority, and they didn't here. What they did was they referred the applicant to the doctor, which they're supposed to do. The doctor is then supposed to issue a primary or preliminary finding with regard to the medical condition. So in the case of drug usage, for example, if the consular official or someone in the consular office had asked the individual whether or not they had used drugs, and they gave a complete and accurate history in the same fashion that they gave the doctor, then that argument would be unavailing to you at this point, correct? Yes, that is correct, except that that's only one part of the process, because they then have to investigate whether or not that particular admission, that fact that they say, yes, I did use drugs at this time or however long they did, that's part of it. When did you use it? How long ago did you use it? Is that a ground for preclusion of the issuance of a visa? Is there remission? Is there a two- or three-year history of not having used the drugs that would allow you then to be able to be eligible for that visa? None of that was done. That's the obligation of a consular officer, and they just let that go. They said the doctor said that you've used drugs, and that's it. We have that as... What are you asking us to do precisely? We're asking you to send the case back to district court so that we can have a hearing on the issues of whether or not the consular officers acted correctly. And what do you hope to gain? In the end, are you expecting or do you want relief in order by a federal court to direct the council in Manila to do a particular act? What we are asking is that we get an order from the federal court, yes, asking that the consular officer exercise their appropriate obligation and authority, that they investigate the drug usage allegations, that they apply the regulations and the law, and determine whether or not someone who used drugs one time, or as an experiment 15, 20 years ago, is excludable on that basis. So would we, if we did that, would we wind up bringing the entire foreign consular corps within the jurisdiction of the court to the extent that there was anybody who is in the United States who has a familial relationship with the applicant in whatever foreign country that might be? Presumably, someone who did not have familial contacts here would not have that same jurisdictional hook, correct? I agree. So we're going to have two sets of jurisprudence, at least as it impacts consular corps action, as between petitioners or applicants. I think that that's what the law calls for, though, Your Honor. I think that those who have a connection legally to this country, and are outside of the country, have far fewer rights, if any, than those who are family-connected to someone who has the congressional given right to petition for them. Because it is through that U.S. citizen or permanent resident, and their right to petition their family member, and to bring their family together, that they have the right to petition. And they have the right to say, I'm entitled to due process, because it affects my family member. Let me give another example, and this is just a hypothetical. My wife and I sponsored a family from Cambodia in 1980, had to boat people and so forth. Now, the consular, in granting a visa to somebody who in our family did have tuberculosis, would not have any rights, since there was no family relationship, correct? I agree with that. They could keep that person out because they had TB, without fear of offending any American citizen who had a standing to petition. But we did have standing. I mean, we did support them, and so forth and so on. I think that there is a distinction. And in part, it's because while you are given the right through Congress to file that petition, it doesn't rise to the point of substantive due process. And I think that that extra step allows the, or requires, rather than allows, requires that extra care be taken, and that the U.S. citizen has the right to petition. That the activity of the consular officer be subject to review, if in fact he's not obeying the law and the regulations. Okay. I think we have your argument well in hand, so why don't we hear from the President. Good morning, Assistant United States Attorney Gwen Gamble on behalf of the Department of State. Your Honor, despite how the appellants characterize their action in reality, they're seeking judicial review of a consular officer's denial of a visa. Counsel just indicated that what she would like the court to do is to have the lower court make findings about whether or not the consular officers acted correctly, whether they acted appropriately. And that's exactly what the doctrine precludes. The contention that appellants make that the consular officers didn't make this decision, that's their legal characterization. And what they're claiming is that by considering statements that were made in a medical examination, the consular officers somehow delegated their role to the medical examiners. That's not what happened here. The consular officers pursuant to the regulations had medical exams done. The consular officers pursuant to the regulations are required to consider all statements that are made during the medical exams. They did not, the consular officers did not simply say that there was a finding by a doctor. They looked at the evidence. They looked at the statements. They considered the Philippine laws. They decided whether those statements were sufficient to establish an element of a controlled substance violation. And looking at all of that evidence, the consular officers decided that the applicant's visas should be denied. This is no different than a consular officer considering findings of the doctor in other contexts. For example, the communicable disease finding. A doctor makes that finding, but it is the consular officer who then takes that finding and makes the actual adjudication. Do doctors here actually make any findings, or did they simply pass on statements from the individuals? There are two types of plaintiffs here with respect to the individuals who are in the Philippines. Most of the plaintiffs were found to be inadmissible because of controlled substance violations. There were two that were found, and so that controlled substance violation is inadmissibility on a criminal ground. There were two that were found inadmissible on a health ground, and that was drug addiction and abuse of drugs. So to answer your question, Your Honor, as to the primary plaintiffs, the criminal ground of controlled substance violation, medical examiners made no findings there that were relied upon by the consular officers. What the consular officers did was they reviewed the medical reports, and they saw that there had been information as to how often, when, and what types of drugs individuals had used. And so in that context, the consular officers relied on the statements. In the context of the two cases that were medical findings of drug abuse, the consular officers did consider the doctor's finding, but even in that context, the regulations make it clear that it is the consular officer who decides whether or not the individual is inadmissible. For example, if the consular officer didn't feel that the doctor's finding had enough support or basis, the consular officer under the regulations can actually request that another medical exam be done. And so even in that situation, the consular officer is the one who makes the actual decision. Again... Is there an actual written decision or written denial? Because I didn't find any in the record. There is. What's issued by the consular officer, once he's made his decision, is a refusal where they specify the ground of inadmissibility. So for example, in this case, there would have been a denial of the visa that would have been issued to the appellants, and it would say that they were being found to be inadmissible based on a controlled substance violation. Where is that in the record? It's not in the record, Your Honor. It was not necessary because the plaintiffs, excuse me, the appellants in their complaint concede that the consular officers actually issued a denial and with specifying the basis. Well, wouldn't you think we'd like to see it? Yeah, I was looking. I wanted to see one. Do you have any? I don't have one, but Your Honor, it doesn't say very much. It literally is a document that says what I've just said, that the denial is based on, and then it gives the statute for inadmissibility. I just wanted to see what one actually looked like. I don't have one with me, but I can describe it. It's a form. And it basically says you have been denied a visa for the following form, and you check off the little box that says under this code section. That's all it is. That's simply what it says. Because again here, the doctrine precludes the courts from... Well, why don't you supplement the record and put the excerpts? I would not. Again, the reason we did not do that, Your Honor, is because... Sometimes counsel has the idea that the entire record in these cases are dumped on our laps. It doesn't work that way. We get the excerpts. That's what we look at. But it's not unusual for counsel to omit what we consider relevant documents from the excerpts of record. It's not unusual to supplement them. And I'd be glad to do that, Your Honor. Would you like us to include the denial letters for each of the plaintiffs, or would just one sample be sufficient? Let's see them all. That's absolutely something that I will do. Again, though, here, the facts are undisputed. The counsel denial was sent out. It gave the basis. And what the appellants want this court to do is to look behind the decision and look to see if the counsel acted appropriately, if the counselor officer made the right decision. And that's exactly what the doctrine precludes. The fact that I think gives us some reassurance for the petitioners, or the plaintiffs' appellants in this case, is that here in the United States, they were issued the appropriate, was it I-130 visa? The petition to classify. They were granted. They were granted. So it sort of gives... When the INS actually grants something like this, which we don't normally see, it gives it some weight. But, Your Honor, the petition that you're speaking about, it doesn't talk about whether or not the aliens who are residing in the Philippines are admissible or not. The petition that you're talking about just simply classifies whether or not the alien fits within the immediate relative category. So, for example, the petition simply would say that the petitioner has established that they're the mother of someone who resides in the Philippines, or they're the father of someone who resides in the Philippines. It is in no way substantive as to the admissibility of the person who resides there. We'll put that in, huh? Would you like me to put in the petition as well? Yeah, you know, we like to... You like to see documents. And don't forget that the State Department, right after World War II, had a long history of misabusing that privilege. You know all about that, don't you? I know that that has been an issue, Your Honor, and the doctrine has been questioned many times. I'll read one of my dissents that gives you the whole story. Probably nobody else has read it, so... I've read some of your dissents, Your Honor. I'm not sure I read that exact one, but I've definitely read some of your dissents. Unless the Court has any other questions, I think that just the most important thing that I want to leave you with is that, again, no matter how they're characterizing this, what they're really asking for is this Court to find that the doctrine doesn't apply and to say that courts can look, judicially review decisions of consular officers. Okay, thanks. Thank you. You know, I always think you need about a minute to respond. Excuse me, Your Honor? I think you only need about a minute or two to respond. Actually, Your Honor, I was going to ask if you had any additional questions for me. Oh, you're wonderful. Thank you, Your Honor. Thank you. Boy. We're just sailing along right here. Now we're at Hafer versus Weber.
judges: Pregerson, Wardlaw, Leighton